IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROBERT F. RUDAT,                      )    CASE NO. 1:15 CV 221
                                      )
                Plaintiff,            )
                                      )    MAGISTRATE JUDGE
        v.                            )    WILLIAM H. BAUGHMAN, JR.
                                      )
COMMISSIONER OF SOCIAL                )
SECURITY,                             )    **MEMORANDUM OPINION AND**
                                      )    **ORDER**
                Defendant.            )

## Introduction

**A.      Nature of the case and proceedings**

        This is an action by Robert F. Rudat under 42 U.S.C. § 405(g) for judicial review of

the final decision of the Commissioner of Social Security denying his application for

supplemental security income ("SSI").[1] The parties have consented to my jurisdiction.[2] The

Commissioner has answered[3] and filed the transcript of the administrative record.[4]

---

[1] ECF # 1.

[2] ECF # 10.

[3] ECF # 7.

[4] ECF # 8.

Under the requirements of my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8]and plaintiff has filed his fact sheet.[9] After review of the briefs, the issues presented, and the record, it was determined that this case can be decided without oral argument.

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Rudat, who was 51 years old at the time of the administrative hearing,[10] graduated from high school[11] and lives with his girlfriend.[12] He was last employed in 2009 as an auto mechanic at Galion Chrysler.[13]

The Administrative Law Judge ("ALJ") found that Rudat had the following severe impairments: back pain of an unknown etiology; left rotator cuff syndrome; fibromyalgia; coronary artery disease; status post myocardial infarction; chronic obstructive pulmonary disease (COPD); post traumatic stress disorder (PTSD), anti-social personality disorder; and

---

[5] ECF # 4.

[6] ECF # 9.

[7] ECF # 13 (Rudat's brief), ECF # 19 (Commissioner's brief).

[8] ECF # 14 at 3 (Rudat's charts), ECF # 20 (Commissioner's charts).

[9] ECF # 14 (Rudat's fact sheet).

[10] *Id.*

[11] ECF # 8, Transcript of Proceedings ("Tr.") at 137.

[12] *Id.* at 123.

[13] *Id*. at 39.

alcohol dependence, in partial remission (20 CFR 416.920(c)).[14] The ALJ decided that the relevant impairments did not meet or equal a listing.[15] The ALJ made the following finding regarding Rudat's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is capable of lifting, carrying, pushing and pulling 20 pounds occasionally and 10 pounds frequently; sitting, standing and walking for six hours each in an eight hour workday; and occasionally climbing ramps and stairs, but never climbing ladders, ropes or scaffolds. The claimant must avoid concentrated exposure to dust, fumes, gases extreme cold, heat or humidity. Mentally, the claimant retains the ability to maintain attention and concentration for two hour segments in an eight hour work day; respond appropriately to supervisors and coworkers in task-oriented setting where contact with others is casual and infrequent; and able to adapt to simple changes and avoid hazards.[16]

Given that residual functional capacity, the ALJ found Rudat incapable of performing his past relevant work as a mechanic.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing incorporating the RFC finding quoted above, the ALJ determined that a significant

---

[14] *Id.* at 21.

[15] *Id.* at 21.

[16] *Id.* at 23.

[17] *Id.* at 27.

number of jobs existed locally and nationally that Rudat could perform.[18] The ALJ, therefore, found Rudat not under a disability.[19]

The Appeals Council denied Rudat's request for review of the ALJ's decision.[20] With this denial, the ALJ's decision became the final decision of the Commissioner.[21]

**C.    Issues on judicial review and decision**

Rudat asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Rudat presents the following issues for judicial review:

- Whether the ALJ failed to properly weigh the medical evidence.[22]

- Whether the ALJ failed to properly evaluate Mr. Rudat's credibility.[23]

For the reasons that follow, the decision of the ALJ is not supported by substantial evidence and so must be reversed and the matter remanded for further proceedings.

---

[18] *Id.* at 28.

[19] *Id.*

[20] *Id.* at 2.

[21] *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011); 20 C.F.R. §§ 404.981 and 416.1481.

[22] ECF #13 at 8.

[23] *Id.* at 12.

# Analysis

**A.      Standards of review**

*1.      Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[24]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the

---

[24] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Commissioner survives "a directed verdict" and wins.[25] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[26]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.    *The treating source and good reasons rule***

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[27]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[28]

---

[25] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[26] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[27] 20 C.F.R. § 416.927(d)(2). The companion regulation for disability insurance benefits applications is § 404.1527(d)(2). Rudat filed only an application for supplemental security income benefits.

[28] *Id.*

-6-

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[29] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[30]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[31] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[32] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[33] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[34]

In *Wilson v. Commissioner of Social Security*,[35] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[29] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[30] *Id.*

[31] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[32] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[33] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[34] *Id.* at 535.

[35] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[36] The court noted that the regulation expressly contains a "good reasons" requirement.[37] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[38]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[39] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[40] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[41] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[36] *Id.* at 544.

[37] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[38] *Id.* at 546.

[39] *Id.*

[40] *Id.*

[41] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[42]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[43] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[44] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[45] *Blakley v. Commissioner of Social Security*,[46] and *Hensley v. Astrue*.[47]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[48] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[49] These factors are expressly set out in 20 C.F.R. § 416.927(d)(2). Only if the ALJ decides not to give the treating source's

---

[42] *Id.*

[43] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[44] *Id.* at 375-76.

[45] *Rogers*, 486 F.3d at 242.

[46] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[47] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), (3)-(6).[50] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[51]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[52] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[53] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[54] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[55] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[56]

But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

---

[50] *Id.*

[51] *Rogers*, 486 F.3d at 242.

[52] *Gayheart*, 710 F.3d at 376.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.*

To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[57]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[58] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[59] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[60] or that objective medical evidence does not support that opinion.[61]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[57] *Id.*

[58] *Rogers*, 486 F.3d 234 at 242.

[59] *Blakley*, 581 F.3d at 406-07.

[60] *Hensley*, 573 F.3d at 266-67.

[61] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[62] The Commissioner's *post hoc* arguments on judicial review are immaterial.[63]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[64]

- the rejection or discounting of the weight of a treating source without assigning weight,[65]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[66]

---

[62] *Blakley*, 581 F.3d at 407.

[63] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[64] *Blakley*, 581 F.3d at 407-08.

[65] *Id.* at 408.

[66] *Id.*

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[67]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[68] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[69]

The Sixth Circuit in *Blakley*[70] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[71] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[72]

In *Cole v. Astrue*,[73] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently

---

[67] *Id.* at 409.

[68] *Hensley*, 573 F.3d at 266-67.

[69] *Friend*, 375 F. App'x at 551-52.

[70] *Blakley*, 581 F.3d 399.

[71] *Id.* at 409-10.

[72] *Id.* at 410.

[73] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

-13-

deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[74]

## B.      Review of the ALJ's decision

This is yet another case involving the application of the treating physician/good reasons rule.  Rudat essentially claims that the ALJ erred by giving little weight to the opinion of his treating physician on the purportedly inappropriate grounds that this opinion was not supported by the evidence of record and also based "entirely" on subjective complaints.[75] He further argues that the ALJ then inappropriately gave "great weight" to the opinions of state agency consulting physicians who only reviewed the record.[76] Finally, he asserts that the ALJ failed to properly evaluate his credibility under the applicable standard.[77] Because, as will be shown below, this matter can be adjudicated on the issue of the treating physician's opinion, the credibility question will not be addressed.

The central issue here concerns the opinions of Dr. Fatima Tsalikova, M.D. Dr. Tsalikova began treating Rudat in January 2010,[78] and first noted the presence of fibromyalgia in clinical notes done in July 2011, which noted the existence of more than

---

[74] *Id.* at 940.

[75] ECF # 13 at 9-10.

[76] *Id*. at 10-12.

[77] *Id*. at 13-15.

[78] Tr. at 398.

-14-

twelve tender points.[79] Dr. Tsalikova's notes from January 2012 do record that Rudat complained of pain from his fibromyalgia.[80] Dr. Tsalikova issued functional capacity opinions in August 2012[81] and again in February 2013,[82] and then updated the February 2013 assessment in August 2013.[83]

As to the tender point testing and the diagnosis of fibromyalgia, I note that Dr. Tsalikova has multiple notations of these facts. In progress notes of May 17, 2012[84] and June 21, 2012,[85] Dr. Tsalikova listed Rudat as having two major complaints in June and three in May - the only common complaint being fibromyalgia. The extensive functional impairment questionnaire dated August 13, 2012 also specifically lists fibromyalgia as being diagnosed,[86] and the explicitly cites "tender points everywhere" as being among the "clinical findings that demonstrate and/or support your diagnosis."[87] I would also observe that in the response to this question, D. Tsalikova does not cite Rudat's subjective complaints as the source for her

---

[79] *Id*. at 207.

[80] *Id*. at 359.

[81] *Id*. at 391-94.

[82] *Id*. at 398-403.

[83] *Id*. at 455.

[84] *Id*. at 387.

[85] *Id*. at 386.

[86] *Id*. at 389.

[87] *Id*.

diagnosis. Moreover, also in the same questionnaire, Dr. Tsalikova again mentions "tenderness > 13 points" when asked to list Rudat's primary symptoms, without mentioning any sort of subjective complaints.[88]

Dr. Tsalikova's answers to the August 2012 questionnaire are highly similar to the answers provided in the February 2013 questionnaire. Again, fibromyalgia is listed as a "diagnosed impairment," with the added notation that Rudat meets the "American Rheumatological criteria for fibromyalgia."[89] Again, Dr. Tsalikova expressly noted that the positive "clinical findings" supporting this diagnosis included "tender points" and "chronic fatigue,"[90] while again observing that Rudat's "primary symptoms" of fibromyalgia were "tender points all over, > in shoulders, neck and upper back."[91] I note further that although Dr. Tsalikova found that Rudat's pain from fibromyalgia, as well as from his other impairments, rated as a "4-5" on a 1-10 scale,[92] she was also careful to note that emotional factors, such as depression and anxiety, contribute to the severity of Rudat's symptoms and functional limitations.[93]

---

[88] *Id*. at 390.

[89] *Id*. at 398.

[90] *Id.*

[91] *Id*. at 399.

[92] *Id*. at 400.

[93] *Id*. at 402.

-16-

That said, Dr. Tsalikova supplied a short, one-paragraph statement to Rudat's counsel on August 23, 2013 wherein she indicated that her functional opinion of February 22, 2013 reflected both objective sources for her conclusions, as well as subjective.[94] She stated that she "cannot add anything else" to the February 2013 report.[95] However, in the final sentence, she did state that "depression and fibromyalgia are the diagnoses typically most based on subjective complaints but not objective findings."[96]

It appears that this final comment became one of the only two reasons the ALJ gave for according Dr. Tsalikova's functional opinions "little weight."[97] Although the Commissioner now concedes that it was a "misstatement" by the ALJ to say that Dr. Tsalikova's diagnosis of fibromyalgia and its functional limitations as to Rudat was "entirely" based on Rudat's subjective complaints, the Commissioner maintains that any such error was "harmless" because Dr, Tsalikova's fibromyalgia diagnosis and its related functional effects was not otherwise supported by the evidence of record and was still largely based on subjective complaints.[98]

---

[94] *Id*. at 455. Dr. Tsalikova dictated this note, and signed it electronically. The note, as actually prepared, appears to mistakenly list "pain, tenderness and depression' as "objective" grounds for the diagnoses, while specifying "decreased ROM in the shoulder, MRI findings in the shoulder" as "subjective." *Id.*

[95] *Id*.

[96] *Id*.

[97] *Id*. at 24.

[98] ECF # 19 at 10.

Unfortunately for the Commissioner, the problems related to the handling of Dr. Tsalikova's opinions are much greater than the ALJ's misunderstanding of Dr. Tsalikova's comment. First, there is no acknowledgment in the ALJ's opinion that Dr. Tsalikova is a treating source, and so her opinions have a presumption of controlling weight that can be overcome only after a careful two-stage analysis. This failure alone provides grounds for a remand.[99] Further, the ALJ failed to give a good reason, capable of meaningful judicial review, as to why her opinions deserve less than controlling weight.

In particular, the simple phrase that her opinions are "not supported by the evidence of record" does not provide me with any indication as to precisely what statement of Dr. Tsalikova's is not supported in the record. If it is the mere diagnosis of fibromyalgia, the ALJ himself lists that as a severe impairment.[100] If it is that Dr. Tsalikova's diagnosis of Rudat's fibromyalgia is supported by the existence of more than 13 trigger points, the ALJ has not pointed to any other physical examination of Rudat that contradicts those findings. If it is Dr. Tsalikova's explicit finding that the presence of more than 13 trigger points fails to meet the accepted diagnosis for fibromyalgia of the American College of Rheumatology, the ALJ has cited nothing in the record to support such a finding. And if the ALJ's single use of the rote phrasing is supposed to point the reviewing court to anything specific in the record that challenges, questions, undermines or negates Dr. Tsalikova's highly specific and careful finding that Rudat's pain is at the level of between 4 and 5, and that such a pain level is

---

[99] *Blakley*, 581 F.3d at 408.

[100] Tr. at 21.

-18-

partially attributable to emotional factors, the ALJ has failed to indicate where evidence exists in the record.[101]

Finally, although the Commissioner argues that Dr. Tsalikova's diagnosis of fibromyalgia was inappropriately based on subjective symptoms, that is not precisely what she said, nor does it conform to the understanding of this condition in the case law. As the Sixth Circuit's opinion in Rogers teaches "fibromyalgia is not susceptible to objective verification through traditional means."[102] The diagnosis includes "(1) testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials."[103] Having followed this regimen, Dr. Tsalikova's opinions should have been identified as those of a treating source and evaluated consistent with Rogers. The ALJ failed to do this.

As I have observed before, the "gold standard" for determining the presence of fibromyalgia is the documentation of 11 out of 18 trigger points on the body by a physician who also notes other "hallmark symptoms" and systematically eliminates other diagnoses.[104] Because even a diagnosis of fibromyalgia, which the ALJ concedes does exist here, does not of itself entitle a claimant to benefits as disabled, the finding of what functional limits exist

---

[101] *Friend*, 375 F. App'x. at 551-52.

[102] *Rogers*, 486 F.3d at 244.

[103] *Id.*

[104] *Ormiston v. Commissioner*, 2012 WL 7634624, at * 5 (N.D. Ohio Dec. 13, 2012)(citations omitted).

"will usually involve a treating physician's opinion on that issue as well as testimony from the claimant."[105] To that point, the treating physician's functional limitations opinion will usually depend, "in large part," on the physician's assessment of the patient's subjective complaints,[106] but should also be supported by such objective evidence as the type of treatment used and its effectiveness, as well as other functional capacity studies.[107]

Here, the ALJ's seizing on Dr. Tsalikova's single comment that fibromyalgia as a *diagnosis* is typically based on subjective factors is at once a truism that adds nothing to evaluating her opinions, and also a misreading of the evidence, since her diagnosis of fibromyalgia is not at issue, but rather her opinion as to functional limitations is. In that regard, the ALJ has no analysis of whether Rudat's treatment protocol of 13 separate medications (which Dr. Tsalikova stated she substituted and adjusted to limit symptoms) is consistent with a higher or lower level of disabling pain, or whether Dr. Tsalikova's detailed listing of the location of 11 distinct areas of pain on the body (with corresponding levels of intensity given in six of those areas) also reflects Dr. Tsalikova's opinion as to the overall level of pain and its effect in multiple functional categories.

Instead of a detailed examination of a detailed opinion, which contains in itself ample clinical evidence to consider in evaluating whether the resulting opinion is supported by the evidence of record, the ALJ has instead resorted to dismissing the entirety of the treating

---

[105] *Id.*

[106] *Id.*

[107] *Id.*

source opinion on the rote citation of a single line of boilerplate and then by mischaracterizing Dr. Tsalikova's comment on the role of subjective evidence in diagnosing fibromyalgia as somehow constituting a self-condemnation of her own opinion as to its functional effects. Far from harmless error, the decision to accord Dr. Tsalikova's opinion only little weight, on the grounds given, is not supported by any good reason at all, and so cannot here be affirmed as supported by substantial evidence.

## Conclusion

For the reasons stated, the decision of the Commissioner is hereby reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: March 31, 2016                              s/ William H. Baughman, Jr.
                                                   United States Magistrate Judge

-21-